COMMONWEALTH *vs.* JOHN W. McCARTHY.

SAME *vs.* SAME.

Essex.    October 3, 1932. — December 13, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Municipal Corporations,* Officers and agents, Corrupt practices.  *Evidence,* Remoteness, Of bias.  *Practice, Criminal,* Sentence.  *Words,* "Political purpose."

A verdict of guilty was warranted at the trial of an indictment for violation of G. L. c. 268, § 9, on evidence that the defendant was elected alderman of a city and was assigned to manage a certain department; that he was authorized to employ the laborers in that department; that he immediately discharged all but a few of the laborers previously at work therein and hired his own political supporters to take their places; that a club made up of the employees in that department was formed; that at the first meeting thereof the defendant spoke to the members, emphasizing to them the heavy expense of his campaign for alderman, and then left the meeting, and two of his chief supporters told the members in substance that it had been decided to assess each of them a certain sum each week, that they "had to come across" and that "If any of you fellows happen to get laid off, don't be asking the reason why. You will know why"; that the defendant later, at a meeting of the club, after a speech in which he called the members " rats " and found fault with them for not trusting his two supporters, and stated that "nobody was going to have anything on him," returned to the men sums so collected, and there were no more meetings of the club; and that the defendant's two supporters continued to ask for and receive substantial contributions to the defendant's campaign fund, in substance threatening to lay off those who did not contribute: findings were warranted that the defendant's two supporters collected the money from the employees with the defendant's knowledge and approval and in his behalf, and that he indirectly received presents or rewards from those whom he was authorized to employ.

A verdict of guilty was warranted at the trial of an indictment for violation of G. L. c. 55, § 11, on evidence that the defendant was an alderman of a city and that agents of his solicited and received contributions of money for the purpose of opposing a movement then on foot for securing a new charter for the city: such solicitation and receiving might be found to have been for a "political purpose" and consequently to have violated the statutory provision.

At the trial together of indictments charging violations of G. L. c. 55, § 11, and c. 268, § 9, by an alderman of a city in charge of one of its departments, one who had been hired by the defendant was called by the Commonwealth and was asked on cross-examination when he

first went to work for the city and when he went to work in another department of the city, the defendant's counsel stating that he wished to show that the life work of the witness was municipal employment, and suggesting that the questions were competent as bearing on the matter of bias of the witness because of the defendant's failure to keep him at work. The circumstances in which the witness ceased work in the defendant's department did not appear. The questions were excluded. *Held,* that there was no error in their exclusion, since they dealt with matters too remote from the suggested subject of bias.

Where a judge of the Superior Court presiding at the trial of an indictment makes an order staying the execution of a sentence, imposed by him following a verdict of guilty, to await a decision of this court on exceptions saved by the defendant, power is retained in the Superior Court to correct any error of law which entered into the sentence.

Two INDICTMENTS, found and returned on September 18, 1931, charging, respectively, violations of G. L. c. 55, § 11, and c. 268, § 9.

The indictments were tried together in the Superior Court before *Cox,* J. Material evidence is stated in the opinion. The defendant was found guilty on each indictment, and alleged exceptions.

*E. J. Tierney,* (*M. F. Cronin* with him,) for the defendant.

*H. A. Cregg,* District Attorney, (*J. J. Ryan, Jr.,* Assistant District Attorney, with him,) for the Commonwealth.

DONAHUE, J. The defendant was found guilty by a jury at a trial on two indictments numbered 18975 and 18976. The defendant excepted to the refusal of the judge to give two requests for instructions with reference to the indictment numbered 18975, and to a portion of the judge's charge with reference to the same indictment, to the denial of the defendant's motion for a directed verdict of not guilty on both indictments, and to the exclusion of two questions asked a witness for the Commonwealth on cross-examination.

Certain portions of the testimony as to which there is no dispute are here briefly summarized. The defendant was elected alderman of the city of Lawrence in the fall of 1927, and took office on the first Monday of January, 1928. He testified that he was assigned to the department of streets and water under the charter. Thereafterwards the defendant devoted practically all his time to the work of

the city and had control of one hundred fifty to one hundred seventy-five men who were engaged in the work of that department.    Among those who had been actively engaged in his behalf during his campaign for election were one Reinhardt, who acted as chairman at public rallies, and one Sullivan, who took "charge of pretty near all the inside work of the different ward committees."    Upon his inauguration each of these men was employed by the defendant to work for the city as a laborer in the department of which he was the head but shortly afterwards each was employed in the defendant's office.    In the early spring of 1928 the defendant called a meeting of all the men in his department which meeting was addressed by the defendant, by Sullivan and by Reinhardt.    It is not in dispute that a club made up of men employed in the defendant's department was then formed and was given the name of S and W (street and water) Associates;  that Reinhardt was elected president, Sullivan, treasurer, and one Walsh, vice-president, and that the members of the club for some months paid the sum of $1 weekly to the treasurer or president.    Respecting what was said at the meeting called by the defendant and the defendant's knowledge of the existence of the club and his knowledge of the weekly payment of $1 by the members, the evidence is conflicting.    There was a meeting of the men of the department in early July called by the defendant. The amount which the members of the club had paid in weekly instalments was then paid back to them.    In 1928 there was agitation in Lawrence for a new city charter and various employees in the department controlled by the defendant on solicitation paid to Sullivan and Reinhardt various sums of money for the purpose of defeating the proposed new charter.

1. Indictment numbered 18976 adequately charged in ten counts violations of G. L. c. 268, § 9, which prohibits and penalizes the acceptance directly or indirectly, by an officer of a city who is authorized to employ labor, of a present or reward from a person rendering such labor.    The defendant testified that on taking office as alderman he was assigned to the department of streets and water under the charter, that

he thereupon discharged all but a few of the one hundred fifty to one hundred seventy-five men then employed in that department and hired his own supporters to take their places and that this was in accordance with a custom that always prevailed in Lawrence. The record warrants the conclusion that he alone exercised the power to employ and to discharge men in that department during his term of office. There is nothing to indicate that his right so to do was ever challenged or disputed. There is nothing in the record to indicate that his authority to hire men was questioned at the trial. On all the evidence the jury was warranted in drawing the inference that the defendant was authorized to employ city laborers in his department.

There was evidence that Sullivan and Reinhardt during the year 1928 collected moneys from the men employed in the defendant's department on a weekly basis and in lump sums and other moneys for the stated purpose of defeating the proposed new charter. Although the defendant denied having any connection with the collection of moneys by Sullivan and Reinhardt there was evidence from which the jury was warranted in drawing inferences to the contrary. There was evidence that at the first meeting of the men of the department they were addressed by the defendant who emphasized the fact that his election had cost him a great deal of money. He said he was going to call them together from time to time to instruct them. He concluded by saying that Sullivan and Reinhardt had something to say to them and then left the meeting. Sullivan then spoke and stressed the amount it cost McCarthy to be elected. He asked them if in view of the fact that the men present had been taken care of they thought it fair for one man to stand all the expense. He said that an earlier meeting had been held at which it was decided to ask the men for a lump sum but it was finally decided to assess them so much a week. Reinhardt then told the men that the whole thing in a nutshell was that they "had to come across," that they were to be assessed so much a week; "If any of you fellows happen to get laid off, don't be asking the reason why. You will know why." At the meeting called by the defendant in July there was evidence

on which it might have been found that the defendant appeared with a box under his arm, directed that the windows of the room be closed so that what was said might not be overheard and addressed the members of the club; that he referred to them as "rats", told them that if they couldn't trust Sullivan they couldn't trust him, that whoever distrusted his friend Sullivan distrusted him, that if they couldn't trust his friends Sullivan, Reinhardt and Walsh there would be no club, that he had their money in the box and they were going to get it back and that "nobody was going to have anything on him." The amount which had been paid by the men in weekly instalments was given to the men in envelopes by Sullivan and Reinhardt. There were no more meetings of the men after this but Sullivan and Reinhardt continued to ask for and receive money from the men. One of them who had been told by Sullivan that he had to pay $100 into the campaign fund and after paying $10 on account of this purpose refused to pay any more, testified that after he had been later laid off he asked the defendant if the reason was that he did not "kick in" and that the defendant started to say something about campaign expenses being heavy and that he had neglected his own business. Another of the men testified that in the early part of 1928 Sullivan told him that all the fellows who had a steady job were chipping in about $100 and upon his reply that he would not pay $100 for sweeping streets was told to see the defendant; that he saw the defendant and asked for a painting job and was told that he was lucky in not being laid off that night for "doing too much belly-aching about paying the $100," that he would be laid off for doing too much "squawking," that if he didn't want to pay the $100 he could get off the job. He later paid $100 to Sullivan in two instalments. Another of the men testified that after having been laid off he told the defendant that he had put quite a lot of money into the campaign and had given Sullivan $100 besides and that the defendant said he knew nothing about it, and that he also told the defendant that he had put in $25 to defeat the new charter and that the response of the defendant to this was that he would tell Sullivan. The crimes here charged are the sort of offences

that ordinarily can be proved only by circumstantial evidence. *Commonwealth* v. *White*, 208 Mass. 202, 204. There was evidence from which, although there was contradictory testimony, the jury might warrantably have inferred that Sullivan and Reinhardt collected the moneys from the men employed in the defendant's department with his knowledge and approval and as his agents, and have found that the defendant indirectly received presents or rewards from men whom he with authority had employed for the city. There was no error in the refusal of the judge to direct a verdict for the defendant on the indictment numbered 18976.

2. The indictment numbered 18975 adequately charged in ten counts violations of G. L. c. 55, § 11. So far as here applicable that statute provides that: "No person holding any public office or employment, under . . . any . . . city . . . shall directly or indirectly demand, solicit or receive, or be concerned in demanding, soliciting or receiving any gift, payment, contribution, assessment, subscription or promise of money or other thing of value for the political campaign purposes of any candidate for public office or of any political committee, or for any political purpose whatever. . . ." A penalty is provided for a violation of this statute. G. L. c. 56, § 60. The comprehensive language of the statute manifests the purpose of the Legislature to make it a criminal offence for one holding public office to collect moneys "for any political purpose" or to receive moneys so collected. There was in 1928 a movement on foot to secure a new charter for the city of Lawrence. Payments of money for the purpose of opposing such a new charter were solicited and received by Sullivan and Reinhardt from the employees of the defendant's department. On all the evidence some of which is hereinbefore summarized the jury was warranted in finding that Sullivan and Reinhardt in the solicitation and acceptance of such payments were acting as the agents of the defendant. The defendant contends that the prohibition of the statute covers only situations where the purpose of the collection of moneys is the personal gain or advantage to some one seeking public office or the benefit to a political committee organized to further the interests or ambitions of

individuals or of a political party. The language of the statute which includes the collection of money not only for those specific purposes but also "for any political purpose" does not permit such a narrow construction. The word "political" in its ordinary meaning is not limited to something pertaining merely to the actual management of a government by individuals for the time holding office thereunder. The essential significance in the proper and ordinary use of the word includes anything pertaining to the establishment of a form of government. Every citizen has the right to concern himself with the form of charter under which the affairs of his city shall be conducted. This is a political right since it has to do with the fundamental plan by which the city shall be governed. A purpose to influence the exercise of political rights is a political purpose. One who has sought and attained office under a certain form of charter may in a legitimate manner pursue the political purpose of resisting any change in that charter. If he directly or indirectly collects or receives money in furtherance of that political purpose he is doing what the statute has forbidden and made a crime. *United States* v. *Wurzbach,* 31 Fed. Rep. (2d) 774, 776. *United States* v. *Scott,* 74 Fed. Rep. 213. *Ex parte Curtis,* 106 U. S. 371. In the first of the cases just cited the indictment was founded on a Federal statute, somewhat similar in purpose and using similar language to that in the statute which forms the basis of this indictment. In the cited case money paid to the defendant to promote his candidacy for nomination in a State primary to the office of representative in Congress was held to have been received for a political purpose. But since the powers granted by the Constitution to Congress did not include authority over a primary election held under the laws of a State the political purpose was held to be a State and not a Federal political purpose and the demurrer to the indictment was sustained. There can be no question of the authority of the Legislature of this Commonwealth to forbid the holder of a public office which is "a public trust, to be held and administered entirely and absolutely for the benefit and in the interest of the people" (*Ashley* v. *Three Justices of the Superior Court,* 228

Mass. 63, 73), soliciting or receiving moneys "for any political purpose."

There was no error in the refusal of the judge to give the defendant's requests for rulings numbered 8 and 9, which in substance state that the collection or receipt of money to influence public opinion or the decision of the people on the question of the adoption of a proposed city charter is not a violation of the statute. The exception to the portion of the judge's charge which stated that "a question of the adoption or not of a new charter for a city is one involving the political rights of the citizens of that city, and is within the scope of that statute, which I have just read for you" must be overruled.

3. A witness called by the Commonwealth who had been hired by the defendant in 1928 was asked on cross-examination by the defendant's counsel when he first went to work for the city and when he went to work in the public property department of the city. The defendant's counsel stated that he wished to show that the life work of the witness was municipal employment and that after ceasing to work in the defendant's department he was employed by another alderman in another city department and suggested that the questions were competent as bearing on the matter of bias of the witness because of the defendant's failure to keep him at work. While the circumstances under which the witness ceased work in the defendant's department were relevant if they had any tendency to show bias, the record does not disclose what those circumstances were. In any event the questions excluded dealt with matters entirely too remote from the suggested subject of bias and there was no error in their exclusion.

4. The indictment numbered 18975 contains ten counts. Upon motion of the defendant the Commonwealth specified the names of the ten persons from whom it was alleged money was solicited and received for political purposes in violation of the statute (G. L. c. 55, § 11). At the close of the evidence the defendant duly moved for the direction of a verdict on all counts of the indictment and upon the denial of his motion saved an exception. The record before us does

not show that the payments of money made by the individuals specified in counts 2, 3, 4 and 6 were made for the political purpose of opposing a change in the city charter and we are of the opinion that in the absence of evidence to that effect the defendant was entitled to have a verdict directed for him on those four counts. The judge by an order stayed the execution of the sentence awaiting a decision on the exceptions taken and thus retained the power to correct any error of law which entered into the sentence. *Commonwealth* v. *Lobel*, 187 Mass. 288. The defendant's exceptions are sustained as to counts 2, 3, 4 and 6 of indictment numbered 18975 and overruled as to all other counts of that indictment. The exceptions as to all counts in indictment 18976 are overruled.

*So ordered.*