447 P.2d 866

C. Lawrence HUERTA, Petitioner,

v.

Al J. FLOOD, Justice of the Peace, West Phoenix Precinct, Maricopa County, Arizona, Respondent.

No. 9378.

Supreme Court of Arizona, In Banc.

Nov. 22, 1968.

Jack C. Cavness, Harry A. Stewart, Jr., and Leon S. Jacobs, Phoenix, for petitioner.

Robert K. Corbin, Maricopa County Atty., by Stephen A. Gerst and Jerry M. Stewart,

Deputy County Attys., Phoenix, for respondent.

UDALL, Vice Chief Justice.

The petitioner, C. Lawrence Huerta, seeks from this Court a writ of prohibition against the Justice of the Peace of the West Phoenix Precinct, Maricopa County, from proceeding further in the pending criminal matter of State v. Huerta.

Petitioner, an incumbent judge of the Superior Court, Maricopa County, has been charged in six counts of violating A.R.S. § 13–1021 which reads:

"§ 13–1021. Prohibition; penalty

A. *No public officer or public employee* of the state, a state agency, or a political subdivision *shall directly or indirectly* command, *ask,* coerce, or attempt to coerce any officer or employee of the agency, department, or division, over which he has direct supervision, to pay, lend, or contribute any part of his salary or compensation or *anything* else *of value* to any party, committee, organization, agency or person *for political purposes.*

B. A person who violates a provision of this section shall be punished by imprisonment in the state prison for not to exceed three years, by a fine not exceeding five thousand dollars, or both. Added Laws 1967, Ch. 17, § 1.

Effective March 1, 1967." [our emphasis]

The petitioner has sought a writ of prohibition on several grounds, one of which is the averred unconstitutionality of A.R.S. § 13–1021. Since the question of constitutionality is dispositive of the case before us we shall not discuss the other issues raised by the petitioner.

Similar, but not identical statutes have been upheld in other jurisdictions, see e. g. Section 104.31, Florida Statutes,[1] which

[1] The pertinent part of Section 104.31, Florida Statutes, F.S.A., provides:
"Political activities of state, county and municipal officers and employees.

"(1) No officer or employee of the state, or of any county or municipality thereof, except as hereinafter exempted from provisions hereof, shall  *  *  *

was upheld in other jurisdictions, see e. g. Section 104.31, Florida Statutes,[1] which was upheld by the Florida Supreme Court in State v. Stuler, Fla., 122 So.2d 1. See also United States of America v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508; In the Matter of Curtis, 106 U.S. 371, 1 S.Ct. 381, 27 L.Ed. 232; Commonwealth v. McCarthy, 281 Mass. 253, 183 N.E. 495, 85 A.L.R. 1141.

The reason or justification for the type of legislation, generally, is readily seen. As is pointed out in Kaplan's "The Law of Civil Service, Chapter 12, such statutes seek to maintain "reasonable neutrality of public employees," to prevent public employees from engaging in "pernicious political activities inimical to the public interest and to protect the public itself from the impositions of political organizations which might be tempted to coerce political action of public employees." Many years ago, then Chief Justice Waite of the United States Supreme Court put it this way:

"A feeling of independence under the law conduces to faithful public service, and nothing tends more to take away this feeling than a dread of dismissal. If contributions from those in public employment may be solicited by others in official authority, it is easy to see that *what begins as a request may end as a demand,* and that a failure to meet the demand may be treated by those having the power of removal as a breach of some supposed duty, growing out of the political relations of the parties. Contributions secured under such circumstances will quite as likely be made to avoid the consequences of the personal displeasure of a superior, as to promote the political views of the contributor—to avoid a discharge from service, not to exercise a political privilege. The law contemplates no restrictions upon either giving or receiving, except so far as may be necessary to protect, in some degree, those in the public service against exactions through fear of personal loss. This purpose of the restriction, and the principle on which it rests, are most distinctly manifested in section 1546, supra,

\*   \*   \*   \*   \*   \*

which subjected an officer or *employe* of the government to dismissal if he required or requested a working-man in a navy-yard to contribute or pay any money for political purposes, and prohibited the removal or discharge of a working-man for his political opinions; and in section 1784, the re-enactment of the act of February 1, 1870, (c. 63, 16 St. 63,) 'to protect officials in public employ,' by providing for the summary discharge of those who make or solicit contributions for presents to superior officers. No one can for a moment doubt that in both these statutes the object was to protect the classes of officials and *employes* provided for *from being compelled to make contributions for such purposes through fear of dismissal* if they refused. It is true that dismissal from service is the only penalty imposed, but this penalty is given for doing what is made a wrongful act. If it is constitutional to prohibit the act, the kind or degree of punishment to be inflicted for disregarding the prohibition is clearly within the discretion of congress, *provided it be not cruel or unusual.*" In the Matter of Curtis, supra. (emphasis supplied)

■ We find no difficulty in holding that the purpose behind such legislation as A.R.S. § 13–1021 is constitutional; our difficulty lies in finding that certainty or specificity in the new crime here created which is required by the hallowed rule of construction that " \*   \*   \* a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess

---

"(b) directly or indirectly coerce or attempt to coerce, command *or advise* any other officer or employee to pay, lend or contribute any part of his sal-

ary, kickback any sum of money, or anything else of value to any party, committee, organization, agency or person for political purposes, \*   \*   \*."

at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. See also State v. Miller, 100 Ariz. 288, 413 P.2d 757 and cases therein cited.

A.R.S. § 13–1021 prescribes that "no public officer or public employee of the state, a state agency, or a political subdivision shall * * * *indirectly* * * * *ask* * * * any officer or employee * * *, over which he has direct supervision, to pay, lend, or contribute * * * anything * * * of value to any party, committee, organization, agency or person for political purposes."

In its attempt to curb corrupt practices in politics has this statute gone so far as to shackle the fundamental right of certain of its citizens to engage in political activities? Has it now become a crime for a school principal who is head of one of the political subdivisions of this state to "ask" a school employee if he would like to circulate literature for a candidate to a political office not in any way connected to the school system? Is it now a crime and a felony for an incumbent legislator to "ask" his secretary if she would mind driving two blocks out of her way to drop some political letters by the post office on her way home?

Without dwelling further on parenthetical questions it is not hard for one to imagine a multiplicity of situations where a public officer or employee might, in all innocence, "indirectly" * * * "ask" * * * "something of value" for some "political purpose."

We have held that the words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended. State v. Miller, supra; State v. Curry, 97 Ariz. 191, 398 P.2d 899. A study of the legislative history of A.R.S. § 13–1021 reveals that the word "ask" did not appear in the original bill. As originally proposed the bill stated, "No person shall directly or indirectly coerce or attempt to coerce * * *." Thus the legislative intent is clear that in the act as passed they intended to prohibit not only coercion and attempts to coerce, but also commandments and mere askings. The more ordinary meanings of "ask" are to inquire, to speak or utter a question, to call on for an answer. "Ask" implies no more than the putting of a question. See Webster's New International Dictionary, Third Edition. Thus where we readily acknowledge a compelling public interest in prohibiting public officers or employees from coercing or commanding other public officers or employees into making political contributions we do not believe the legislature can constitutionally, broadly restrict the right of one individual to ask or inquire of another if he would like to make a political contribution. It's an old cliche that "there's no harm in asking." We quote with approval the language of the Supreme Court of California in Fort v. Civil Service Commission of County of Alameda, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385.

> "However, it was recognized that the right to engage in political activities is a fundamental one under the federal Constitution, * * *.
>
> *   *   *   *   *   *
>
> "The United States Supreme Court and this court have also made it clear in recent decisions that, even if a compelling state purpose is present, the restriction must be drawn with narrow specificity. * * *
>
> *   *   *   *   *   *
>
> "The principles set forth in the recent decisions do not admit of wholesale restrictions on political activities merely because the persons affected are public employees, particularly when it is considered that there are millions of such persons. It must appear that restrictions imposed by a governmental entity are not broader than are required to preserve the efficiency and integrity of its public service."

Aside from the vagueness and uncertainty of the statute, the apparent infringement on fundamental political rights

and freedom of speech, A.R.S. § 13–1021 may be unconstitutional for yet another reason, the degree of punishment.

"B. A person who violates a provision of this section shall be punished by imprisonment in the state prison for not to exceed three years, by a fine not exceeding five thousand dollars, or both."

It will be noted that the complaint filed against the petitioner described the crime set out in the statute as a felony, and the punishment prescribed by the statute clearly shows that the legislature intended it to be a felony since the punishment could extend to three years imprisonment in the state prison, a fine of not to exceed $5,000 or both.

The classification distinguishing a "felony" from a "misdemeanor" is set out in A.R.S. § 13–103:

"A. A felony is a crime or public offense which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor.

"B. When a crime or public offense punishable by imprisonment in the state prison is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a sentence imposing a punishment other than imprisonment in the state prison."

Section 13–1021, A.R.S., as amended, makes no provision for imprisonment in the county jail.

In Section 13–1645, A.R.S., the statute provides:

"Except when a different punishment is prescribed, an offense declared to be a felony is punishable by imprisonment in the state prison for not to exceed five years, and an offense declared to be a misdemeanor is punishable by imprisonment in a county jail for not to exceed six months, by a fine not exceeding three hundred dollars, or both."

It is argued by the respondents that a violation of the statute could be treated as a felony or misdemeanor, according to the gravity of the offense. This argument, however, is entirely repudiated by the sections of the Criminal Code which makes the distinction between felonies and misdemeanors. Under the Arizona law it is impossible for one convicted of a violation of § 13–1021, to be sentenced for a misdemeanor, since the punishment provides for imprisonment in the state prison, by a fine not to exceed $5,000, or both.

In Fort v. Civil Service Commission of Alameda County, supra, the California court clearly stated that a statute which is partially valid and partially invalid cannot stand:

"Where a provision encompasses both valid and invalid restrictions on free speech and its language is such that a court cannot reasonably undertake to eliminate its invalid operation by severance or construction, the provision is void in its entirety regardless of whether the particular conduct before the court could be constitutionally regulated and whether there is a severability clause applicable to the provision." (See Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093.)

See also, In re Blaney, 30 Cal.2d 643, 184 P.2d 892.

In this case the close relationship of employer and employee, working together in the same office, could, by the commission of a minor infraction, have the offense magnified to the full scale of a felony that might bring punishment of three years in the penitentiary, a fine of $5,000, or both.

A careful study of the statute shows clearly that the law is vague and uncertain, and that to endeavor to enforce it would deprive the petitioner of equal protection of the law. The minor nature of the offense, if it can be called an offense, is entirely out of proportion to the gravity of the punishment that could be inflicted upon the alleged offender.

We conclude that Section 13–1021 of Arizona Revised Statutes, as amended, is

unconstitutional and void. The writ of prohibition heretofore granted is made permanent.

McFARLAND, C. J., and BERNSTEIN and LOCKWOOD, JJ., concur.

STRUCKMEYER, Justice (concurring).

I concur with the majority both in their view that the Statute A.R.S. § 13–1021 tends to deny political rights and that what is sought to be forbidden is so vaguely expressed that men of ordinary intelligence must necessarily guess at the intended meaning.

"Anything of value" necessarily includes labor and services. So, a public officer such as the governor, for example, cannot seek re-election without incurring the risk that anything he might say or do in directing his campaign will be construed as a command or an asking. If his directions reach or are relayed to a public employee who is a volunteer worker in the campaign, and who is employed in a department over which he has direct supervision, then he has violated the Act. Nor can his wife, relatives or friends act for him since this is "indirectly" doing what the statute forbids. A.R.S. § 13–1021 is so inartfully drawn that the literal language provokes the possibility that any public officer bona fide engaging in election activities can be accused of a felony. I am of the opinion that the Act unconstitutionally curtails the right to engage in political activities.

A rule of law frequently applied by courts is that where there are valid and invalid parts in the same section, paragraph or even sentence of an Act, the valid parts may stand and the invalid parts may be rejected. We said in State v. Coursey, 71 Ariz. 227, 225 P.2d 713:

"This court on numerous occasions has held that if part of an act is unconstitutional and by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance left intact. * * *"

Conceivably, the members of this court might, by striking out words believed to be intrinsically objectionable and defining others so as to limit their operational effect, salvage a part of the Act. But, this presents the question whether the court should undertake what is in the end a legislative responsibility, that is the designing of a law with such clarity that reasonable men may know what conduct must be avoided. Here, the language of the Act so obscures the reach and scope of the legislative intent in certain areas that I am unsure just exactly what conduct was meant to be prohibited. It is clear that whatever conduct was intended to be prohibited is punishable by confinement in the state prison. Rather than embark on such a perilous voyage with human liberties as the stakes, I join with the majority in their belief that the entire Act should be stricken.