Talbott ALLEN and William Lile, Appellants,

v.

BOARD OF EDUCATION OF JEFFERSON COUNTY, Kentucky and Ernest Grayson, Individually and in his official capacity as Superintendent of the Board of Education of Jefferson County, Kentucky, Appellees.

Court of Appeals of Kentucky.

July 6, 1979.

John Frith Stewart, Rex Dunn, Dennis Franklin Janes, Louisville, for appellants.

E. Preston Young, Dan C. McCubbin, Louisville, for appellees.

Before MARTIN, C. J., and HOGGE and VANCE, JJ.

MARTIN, Chief Judge.

This appeal involves two Jefferson County teachers who were involuntarily suspended because they were candidates for public office in the 1977 General Election. The question we face is the interpretation of Policy Number G25.000 of the Jefferson County School Board which requires a mandatory leave of absence for all employees of the Board who are political candidates.

The appellants, Talbott Allen and William Lile, are employed as teachers by the Board of Education of Jefferson County. In 1977, both filed their applications as candidates for State Representative, Allen in the 35th Legislative District, Lile in the 27th Legislative District. In August both were advised by the Superintendent of the Jefferson County Schools that beginning on October 15, 1977, and continuing through November 15, 1977, they would be required to take mandatory leaves of absence from their teaching positions. The authority for this action was Jefferson County School Board Policy G25.000, which concerns school employees who engage in political activities. The policy provides:

B. Employees who seek offices which require part-time service.

(Example: State Senators, State Representatives, etc.)

1. The employee shall be required to take a leave of absence, without pay, beginning October 15th of the year of the general election for which he/she is a candidate. Such leave shall continue until November 15 . . . . .

Neither appellant had sought nor applied for extended leave prior to the receipt of notice from the Superintendent. Upon receipt of the letter by each from the Superintendent, they brought a declaratory judgment suit in the Jefferson Circuit Court. Pursuant to their request, a temporary injunction was entered prohibiting enforcement of the policy of the Board. After the election the case was not pursued as diligently as it had been; however, a judgment was entered on June 1, 1978, from which this appeal was taken.

The appellants prevailed at the early stages of these proceedings, and apparently it is only because the judgment upholds the regulation that the present appeal is taken. We believe, while the School Board may set reasonable standards for teacher activity, Policy G25.000 is inappropriate. *See* KRS 160.290(2) and *McCoy v. Weinberger*, 386 F.Supp. 504 (W.D.Ky.1974). The appellants, by running for the legislature, were exercising their rights of free speech and association. These rights are protected by the First Amendment to the United States Constitution and may not be abridged without proof of compelling state interest. "Political belief and association constitute the core of those activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). "The First Amendment protects political association as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976).

The policy of the School Board, as it was applied to appellants, became an order without recourse and penalized them for seeking political office. Such an application violates both the First and Fourteenth

Amendments of the Constitution of the United States.

In *Pickering v. Board of Education*, 391 U.S. 563, 568, 573, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968), the court stated,

It cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.

. . . [T]he interests of the school administration in limiting teachers; opportunities to contribute to public debate is not significantly greater than its interests in limiting a similar contribution by any member of the general public.

The appellants argue that the policy was overbroad in that the mandatory leaves of absence were imposed upon the appellants without any determination as to whether the political activity in which they were engaged would adversely affect the performance of their duties. The policy, therefore, as it was applied to appellants, violates the requirement that a state limitation on a constitutional right must be limited to the need for the limitation. In the present situation the need was for the teachers to perform under the terms of these contracts to teach in the public schools of Jefferson County. There was no showing nor was there a single allegation that their political activity would affect their work as teachers. *See Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

The Board of Education's interest in protecting the quality of education can be accomplished by a more appropriate regulation. The regulation should include some individual determination that the teacher's participation in the political process would adversely affect them in the performance of their teaching duties. *See Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

The appellants' second argument is that the application of the policy deprived them of equal protection under the Kentucky and United States Constitution. The mandatory leaves of absence were imposed only on those teachers seeking elective office. Teachers engaged in other time-consuming activities were not required to take a leave of absence. There was no showing that political campaigning was the only activity that would adversely affect the quality of education and warrant a mandatory leave of absence. In order for this classification to be justified it must be shown that it is rationally related to the interests which are sought to be protected. *See Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). There is no showing that seeking political office is an activity which hinders teachers in the performance of their duties.

We agree with appellants that the trial court acted improperly in signing the tendered findings of fact, conclusions of law and judgment. The judgment of the Jefferson Circuit Court is reversed and the case returned to that court for such further action as is deemed necessary.

All concur.