383 So.2d 389 (1980)
STATE of Louisiana
v.
H. M. "Mike" CANNON.
No. 66219.
Supreme Court of Louisiana.
April 7, 1980.
Rehearing Denied May 19, 1980.
*391 Steve M. Marks, Frank J. Gremillion, Cyrus Greco, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., David Bourland, Robert Hester, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-respondent.
WATSON, Justice.[*]
Relator, H. M. "Mike" Cannon, Clerk of Court of East Baton Rouge Parish, was convicted of public salary extortion (LSA-R.S. 14:136(1)).[1] He contends before this Court that there were deficiencies in proof, that the statute under which he was convicted is unconstitutional, and that he was subjected to double jeopardy.
Cannon was indicted for public salary extortion (LSA-R.S. 14:136(1) and public salary deduction (LSA-R.S. 14:135).[2] The indictments were quashed because the grand jury was unlawfully constituted, State v. Cannon, 372 So.2d 1237 (La., 1979), and defendant was reindicted for the same offenses. When a mistrial was granted on motion of defendant, he was tried again and convicted of public salary extortion and acquitted of public salary deduction. A writ of certiorari issued to review defendant's four assignments of error.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
Defendant contends that the trial court erred in refusing to grant a motion for acquittal because the State did not prove essential elements of the offense. It is argued that there was no evidence of threats or offers of reward as required by LSA-R.S. 14:136(1). Defendant contends that there was no evidence of suggestion that a failure to contribute to his campaign fund would result in the "loss nor impairment of value" of his employees' jobs, or that the payments by his employees were a "reward or remuneration" for their jobs.
The essential elements of public salary extortion are: (1) solicitation or receipt, or attempted solicitation or receipt, (2) of money or things of value from a public officer or employee, (3) either upon suggestion or threat that failure to pay will result *392 in loss or impairment of value of the employment, or when the payment is given as a reward or remuneration for securing the employment.
Among the seven witnesses called by the State were six employees of defendant's office. None of the State's witnesses testified to overt threats by defendant. However, defendant did ask the supervisors in his office to contribute a full month's salary and the assistants to contribute a half month's salary, promising that those who helped him would be helped in turn. When one employee asked what he meant, he replied "... through evaluations when evaluation time came." (Tr. 89) According to another witness: "He said that he would give us a raise to make up any contribution to the pledge." (Tr. 133) This employee was told to speak to others and " . . . remind them that evaluation time was coming up and it would be appreciated." (Tr. 133-134) The witness said: I was to report before January 15 which employees did or did not pledge." (Tr. 160)
By mentioning the upcoming quarterly evaluations and their concomitant raises when discussing campaign contributions, Cannon gave the clear impression that there would be no raises unless the recommended month's salary or half month's salary was contributed to the campaign fund. The words were spoken in the context of an employer-employee relationship and the reasonable conclusion is that they were intended to intimidate. Although some witnesses testified that they felt no compulsion to contribute, other employees said they assumed that if they contributed they would receive raises.
Defendant contends that there was no evidence to show a threat or suggestion that failure to pay would result in the "loss or impairment of value" of the employment or in the alternative, that the payments were "reward or remuneration for securing" employment. We disagree.
"Impair" is defined as:
"To weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." Black's Law Dictionary, Fifth Edition, page 677.
Defendant here clearly implied that those employees who agreed to contribute to his re-election campaign would receive salary increases and those who declined would receive no salary increases. Any refusal to cooperate would certainly affect the value of their employment in an injurious manner.
Defendant's final contention with regard to these assignments is that implicit in the trial judge's verdict of not guilty to the charge of public salary deduction is the finding that defendant did not offer his employees a pay raise in return for political contributions. This contention is without merit. Although defendant was acquitted of public salary deduction, that acquittal does not negate the finding that he offered his employees a pay raise in return for a contribution. The acquittal on the charge of public salary deduction simply means that defendant did not keep part of the employees' pay checks for himself. Instead, he allowed the checks to be dispersed to his employees but expected reimbursement. Therefore, he did not "retain or divert" the funds and could not be found guilty of public salary deduction.
LSA-C.Cr.P. art. 778 governs the motion for acquittal. It provides:
"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense."
The denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Vaughn, 378 So.2d 905 (La., 1979). After reviewing the record, we conclude that there was evidence of all essential elements and the trial judge *393 did not abuse his discretion by denying the motion.
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant assigns as error the trial judge's refusal to quash the indictment on the ground that LSA-R.S. 14:136(1) is unconstitutionally vague and overbroad.
A statute is unconstitutionally vague if men of common intelligence must guess as to its meaning. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). To meet due process requirements, the language of the statute must give adequate warning of the conduct proscribed and must also provide standards to enable judges and juries to fairly administer the law. Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1951).
In State v. Dousay, 378 So.2d 414 (La., 1979) the court stated:
"With regard to the requirement of adequate notice, this court has held that the constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that a penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto.... The due process clause of the Louisiana Constitution has also been found to demand that words and phrases employed in statutes or regulations may not be so vague and indefinite that any penalty prescribed for their violation constitutes the taking of liberty or property without due process of law.... Similarly, a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of the due process clause of the Fourteenth Amendment of the United States Constitution. 27... (Citations omitted)
"Both the constitutional guarantees of procedural due process and the right to a fair trial embodied in Article 1, § 16 of the Louisiana Constitution also require that a criminal enactment contain an ascertainable standard of guilt and that it `mark[s] boundaries sufficiently distinct for judges and juries to administer the law in accordance with the legislative will.' City of Baton Rouge v. Norman, 290 So.2d 865, 868 (La., 1974). The United States Supreme Court has held that `[a] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it . . . leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.' Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S.Ct. 518, 520-521, 15 L.Ed.2d 447, 450 (1965).
"The constitutional requirement of definiteness is satisfied when the language of a criminal enactment `has a generally accepted meaning such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden.' State v. Defrances, 351 So.2d 133, 135 (La.,1977) or when `the crucial words [or] phrases in the criminal statute have a fixed and definite meaning for a person of ordinary intelligence.' State v. Cloud, 248 La. 125, 130, 176 So.2d 620, 622 (1965)." 378 So.2d 416-417.
LSA-R.S. 14:136(1) clearly prohibits the solicitation or receipt, or attempted solicitation or receipt, of a payment from a public officer or employee when that payment is obtained or solicited upon suggestion or threat that the failure to pay will result in the loss of impairment of value of the employment, or when the payment is a reward or remuneration for securing the employment. Defendant had adequate notice that any attempt to use his employees' jobs as leverage in the solicitation of contributions would bring him within the ambit of LSA-R.S. 14:136(1). The statute provides the trier of fact with sufficient standards to fairly determine defendant's guilt or innocence. Only if a payment is solicited or obtained from a public employee as a *394 reward for securing employment or upon suggestion or threat that the failure to pay will have an adverse effect on employment may a defendant be found guilty. The statute gives notice to defendants and provides adequate standards for triers of fact; the statute is not unconstitutionally vague.
Defendant also contends that the statute is overly broad. The overbreadth consideration applies to statutory language which, though not vague, encompasses protected as well as unprotected conduct. Activities subject to state regulation may not be governed by unnecessarily broad means which invade protected freedoms. NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964).
Defendant bases his overbreadth argument on a decision of the Arizona Supreme Court invalidating a statute which defendant contends is functionally identical to LSA-R.S. 14:136(1). In Huerta v. Flood, 103 Ariz. 608, 447 P.2d 866 (1968), A.R.S. § 13-1021 was declared unconstitutional. That statute read:
"No public officer or public employee of the state, a state agency, or a political subdivision shall directly or indirectly command, ask, coerce, or attempt to coerce any officier or employee of the agency, department, or division, over which he has direct supervision, to pay, lend, or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency or person for political purposes."
There is a major distinction between the Arizona statute and the Louisiana statute in question here. The Arizona law prohibited any public officer or employee from seeking political contributions from public employees under his supervision. The Louisiana provision prohibits the use of a public employee's job as leverage in soliciting contributions. While the Arizona statute prohibited the mere asking for contributions, LSA-R.S. 14:136(1) allows solicitation as long as there is no connection between the contribution and the security or value of the employee's job.
Defendant contends that there was no evidence that he overtly threatened his employees and the trial court found that mere solicitation implied a threat. Therefore, defendant argues that the Louisiana statute, like the Arizona statute, prohibits mere asking and is unconstitutional. This contention is without merit. The trial judge may have well found that Cannon's mere solicitation did not constitute a threat or suggestion, but rather that the solicitation coupled with the discussion of quarterly evaluations constituted the threat or suggestion required by the Louisiana statute. The connection between the contribution and the possible loss or impairment of employment was sufficiently explicit to make the conduct unlawful.
Defendant also contends that several key words in the Louisiana statute render it overly broad. LSA-R.S. 14:3 provides that words are to be "taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." The constructions defendant urges are strained and inconsistent with a reasonable reading of the statute. Read in its usual sense, the language of the statute does not encompass protected conduct and is not overly broad.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the trial court erred in denying his motion to quash the indictment on the ground of double jeopardy.
The original trial commenced on September 20, 1979. The state produced seven witnesses prior to the noon recess. Judith Redden, called as a State witness, testified favorably to defendant. During the noon recess, one of the assistant district attorneys prosecuting the case had Ms. Redden arrested for perjury. Defendant moved to quash his indictment on the ground that defense witnesses would be afraid to testify for fear of arrest. The trial court denied the motion to quash and suggested that the appropriate motion would be for mistrial. *395 Defendant objected to the denial of the motion to quash and moved for a mistrial. After the testimony of five witnesses, a mistrial was declared. Defendant contends that the prosecutor's actions forced him to move for a mistrial and that the constitutional prohibition against double jeopardy bars his re-prosecution for the same offense.
In United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) the United States Supreme Court addressed the question of whether the Double Jeopardy Clause of the Fifth Amendment was violated by the retrial of a defendant whose original trial had ended in a mistrial at his request. Ordinarily, the Double Jeopardy Clause does not stand in the way of re-prosecution where defendant has requested a mistrial. However, in Dinitz, the court noted:
"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where `bad-faith conduct by judge or prosecutor,' United States v. Jorn, supra, 400 U.S. [470] at 485, 91 S.Ct. [547] at 557, 27 L.Ed.2d 543 threatens the `[harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. Downum v. United States, 372 U.S. [734] at 736, 83 S.Ct. [1033] at 1034, 10 L.Ed.2d [100] at 102. 27 . ." (Citations omitted) 424 U.S. 611, 96 S.Ct. 1081.
As was stated in United States v. Martin, 561 F.2d 135 (8th Cir. 1977):
"Thus where `prosecutorial overreaching' is present, United States v. Jorn, supra, 400 U.S. at 485, 91 S.Ct. 547, the interests protected by the Double Jeopardy Clause outweigh society's interest in conducting a second trial ending in acquittal or conviction. United States v. Kessler, 530 F.2d 1246, 1255-56 (5th Cir. 1976). See United States v. Wilson, 534 F.2d 76, 80 (6th Cir. 1976)." 561 F.2d 139.
The issue before us, therefore, is whether the arrest of Ms. Redden was such prosecutorial overreaching as to bar further proceedings against defendant.
Mere negligence is not the type of overreaching contemplated by Dinitz. Lee v. United States, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); United States v. Martin, supra. As was stated in United States v. Kessler, 530 F.2d 1246 (5th Cir. 1976):
"To find `prosecutorial overreaching' the Government must have, through `gross negligence or intentional misconduct,' caused aggravated circumstances to develop which `seriously prejudice[d] a defendant' causing him to `reasonably conclude that a continuation of the tainted proceeding would result in a conviction.' United States v. Dinitz, supra, 424 U.S. at 608, 96 S.Ct. at 1080, 47 L.Ed.2d at 274, 44 U.S.L.W. at 4312." 530 F.2d 1256.
Defendant contends that the prosecutor's conduct was intended to provoke a mistrial to allow the State to obtain a more favorable position at a subsequent trial, or to force defendant to continue with the trial after defense witnesses had been seriously compromised.
There is no evidence that the State deliberately attempted to abort the trial. The State opposed defendant's motion for mistrial and sought to elicit testimony from defense witnesses that they would tell the truth despite Ms. Redden's arrest. (Tr. 146, 151, 157, 160 [9/20/79]). The record does not reveal that the State was losing its case and provoked a mistrial to gain an opportunity to begin anew. The prosecutor exhibited no bad faith; the most that can be said is that he was negligent.
Ms. Redden testified that she was arrested while sitting outside the courtroom when other witnesses were in the area. (Tr. 170, [9/20/79]) Although it would have been possible and preferable for the arrest to have taken place elsewhere, all the witnesses who knew of the incident swore that they would testify truthfully despite what they saw or heard. (Tr. 146, 151, 157, 160 [9/20/79]) While we cannot condone the *396 prosecutor's actions, there is no evidence that he acted in bad faith or that his conduct was so gross or wanton as to warrant the dismissal of these proceedings on the basis of double jeopardy. Because the witnesses all testified that the prosecutor's action would not prevent them from telling the truth, there was no evidence that the action seriously prejudiced defendant.
This assignment lacks merit.
For the reasons assigned, the conviction is affirmed, and the case is remanded to the trial court for sentencing.
AFFIRMED AND REMANDED.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent from the majority opinion's holding pertaining to the double jeopardy issue.
In this case a state's witness who had given testimony favorable to the defendant was arrested for perjury in the presence of defense witnesses who had not yet testified. The prosecuting attorney who caused the arrest warrant to issue accompanied the officers during the arrest which occurred in the courthouse hallway during a recess. The prosecuting attorney testified that he assumed that other witnesses would be present in the hallway when the arrest was made. The record contains no explanation of why the prosecuting attorney felt it was necessary to arrest the witness at that particular time and place. The witnesss was an employee of the clerk of court in the same courthouse and apparently had not been released from sequestration. The other defense witnesses testified that the event made them feel "scared," "apprehensive" and caused them to speculate "if we don't necessarily tell what the District Attorney wants to hear that we may be subject to perjury . . . ."
Although the defense witnesses, in response to cross examination by one of the prosecuting attorneys, testified that they would tell the truth if forced to testify, it is clear they were unwilling or reluctant to do so because they felt that their truthful testimony would provoke the assistant district attorneys to have them arrested for perjury. Consequently, the trial judge granted the defendant's motion for a mistrial.
As correctly stated by the majority opinion, the Double Jeopardy Clause bars retrial where the prosecution through gross negligence or intentional misconduct, causes aggravated circumstances to develop which seriously prejudice a defendant, causing him to seek a mistrial because of his reasonable conclusion that a continuation of the tainted proceeding would result in a conviction. United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); United States v. Kessler, 530 F.2d 1246 (5th Cir. 1976). Applying this rule to the facts of this case, it is my opinion that the Double Jeopardy Clause does not permit a second trial.
The prosecuting attorney was at least grossly negligent in arresting a witness, who had testified favorably to the defendant, for perjury in a situation where defense witnesses who were about to testify were present or became immediately aware that the arrest had been made. He should have realized that such an arrest at this time and place would have a coercive effect, especially because of his own participation in the arrest. The testimony of the defense witnesses solidly indicates that the prosecutorial misconduct prejudiced the defendant's case and that defense counsel's conclusion that a continuation of the tainted proceeding would have resulted in an unfair trial was reasonable.
Accordingly, I agree with the majority opinion's statement of law, but I respectfully suggest that it has not been applied correctly to the facts of the present case.
NOTES
[*] Honorable Edward A. de la Houssaye, III participated in this decision as Associate Justice ad hoc.
[1] LSA-R.S. 14:136(1) provides:

"Public salary extortion is committed when any person shall:
"(1) Solicit or receive, or attempt to solicit or receive, either directly or indirectly, the payment of any money or other thing of value from any public officer or public employee to himself or any other person or political organization, through any means or form whatsoever and for any purpose whatsoever, when such payment is obtained or solicited upon suggestion or threat that the failure to make such payment shall result in the loss or impairment of value to such officer or employee of his office of employment, or when such payment shall be a reward or remuneration for securing such office or employment; and proof that such payments were collected from or paid by such officers or employees on a uniform or progressive percentage or amount basis, shall be presumptive evidence that payments were made under duress or upon the considerations set forth hereinbefore; or".
[2] LSA-R.S. 14:135 provides:

"Public salary deduction is committed when any public officer or public employee shall retain or divert for his own use or the use of any other person or political organization, any part of the salary or fees allowed by law to any other public officer or public employee.
"Whoever commits the crime of public salary deduction shall be fined not more than one thousand dollars, or imprisoned for not more than six months, or both."