The Honorable Bynum Gibson State Representative 312 South Main Street Dermott, AR 71638-2439
Dear Representative Gibson:
This is in response to your request for an opinion regarding the enforceability or constitutionality of the following county personnel policy:
SEEKING PUBLIC OFFICE
 Any non-elected employee of Ashley County receiving compensation by the use of Ashley County Public Funds must comply with the following guide lines:
 1. When seeking a publicly elected office of Ashley County Government, employee must be removed from active employment by Ashley County by, i.e.: resignation, termination, or approved leave of absence without pay; for the time frame beginning with a public announcement such as a notice by a news media or the registration for candidacy with the County Clerk, which ever comes first, until it is determined by the Ashley County Election Commission that said employee has been eliminated from election, or said candidate (employee) has no further opposition to election to the office or position that was filed for.
My research has not revealed an Arkansas case addressing this precise issue. A conclusive answer may therefore require resort to the courts. I believe that an Arkansas court might be persuaded by cases from other jurisdictions that have upheld this type of regulation. It is therefore my opinion, particularly in light of the presumption of constitutionality accorded all legislative enactments, that the policy would probably withstand judicial scrutiny.
It should be initially recognized that the county, acting through its quorum court, may exercise "local legislative authority not expressly prohibited by the Arkansas Constitution or by law for the affairs of the county." A.C.A. 14-14-801(a) (1987). See also Ark. Const. amend. 55, 1(a). The county's authority extends to the exercise of "powers, not inconsistent with law, necessary for effective administration of authorized services and functions." A.C.A. 14-14-801(b)(13) (1987). Additionally, the county quorum court is authorized to exercise legislative authority with regard to "employee policy and practices of a general nature." A.C.A. 14-14-805(2) (1987).
It is clear from the foregoing that the county may develop general employee policies, and I believe this could extend, as a general matter, to a policy restricting in some manner the political activities of public employees. A constitutional issue remains, however, concerning the scope of such a policy. State statutes and local governmental regulations in other jurisdictions which restrict political activities of public employees have been challenged as constituting an unconstitutional infringement on the employees' freedom of speech or association guaranteed under the First Amendment to the United States Constitution. See 51 A.L.R.4th 702.[1]
My research indicates that there is support for the proposition that statutes or ordinances restricting political activities by public employees are valid where the enactments serve the state or local governmental interest in maintaining discipline and providing for the effectiveness of employees. Id. It has been stated that "[n]either the right to associate nor the right to participate in political activities is absolute in any event." United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548 (1973), cited in Otten v. Schicker,655 F.2d 142 (8th Cir. 1981). It seems that the county has the power, generally, to regulate the political conduct of its employees in order to promote efficiency and integrity in public service. See generally Broadrick v. Oklahoma, 413 U.S. 548
(1973); Wisconsin State Employees Association v. Wisconsin Natural Resources Board, 298 F. Supp. 339 (W.D.Wis. 1969); United Public Workers of America v. Mitchell, 330 U.S. 75 (1947). The Eighth Circuit Court of Appeals in Otten, supra, noted that the police department policy in that case, which restricted members from becoming a candidate for or campaigning for an elective office, could "serve several valid and important state interests, including attracting qualified persons through guaranteeing job security free from the political arena, and ensuring the impartial execution of the laws." 655 F.2d at 144. Many of the cases in this area involve civil service employees, with the rationale essentially turning on the potential exposure of the merit system to the same type of political activities and abuses which it was designed to avoid. See, e.g., Otten, supra; Johnson v. State Civil Service Department, 280 Minn. 61,157 N.W.2d 747 (1968). See also generally 51 A.L.R.4th 702. Statutes or ordinances applicable to all public employees have, however, also been upheld. Id.
While the governmental interest in insuring efficient and impartial administration of public service has, therefore, been upheld as a valid basis for restricting political activities of public employees, the breadth of the legislative abridgment has in some cases formed the basis for a successful constitutional challenge. Id. at 740; see, e.g., Allen v. Board of Education,584 S.W.2d 408 (Ky. 1979); Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971); Huerta v. Flood, 103 Ariz. 608, 447 P.2d 866
(1968). The problem or challenge is arriving at a balance between the interest of employees, as citizens, in commenting upon matters of public concern, and the interest of the county, as an employer, in promoting efficiency of public services. See Otten, supra; Pickering v. Board of Education, 391 U.S. 563,568 (1968). In this regard, it must be noted that where a governmental regulation proscribes certain types of conduct, rather than "pure speech," the courts have indicated that it will not be struck down as facially unconstitutional unless it is "substantially" overbroad. See Otten, 655 F.2d at 145, citing Broadrick v. Oklahoma, supra. With regard to the policy in question, it seems clear that the restriction does not purport to control or restrict employees' right to voice their personal political beliefs, nor does it infringe their right or ability to effectuate those beliefs at the polls. Rather, it is directed toward conduct, i.e., seeking a publicly elected county office. The argument that the restriction is not substantially overbroad may, in my opinion, be supported by the fact that the personnel policy in question limits the restriction to Ashley County elective offices. See 51 A.L.R.4th at 745-747. In Ferguson Police Officers Assoc. v. Ferguson, 670 S.W.2d 921 (Mo.App. 1984), the court concluded that prohibiting political activity in city elections is a logical place to start if the city in that case was concerned about pressures being put on city employees to support certain candidates, about control over city elections by city employees, or about the appearance of bias in the delivery of public services. Id. at 929.[2] Similarly, the fact that the restriction in this instance no longer applies if the employee (candidate) has no further opposition may reflect the county's valid interest in maintaining the efficiency and political neutrality of its employees.
It is therefore my opinion that a persuasive argument can be made, based upon case law from other jurisdictions, in favor of the enforceability of this particular policy. As noted above, however, a conclusive determination will require a judicial ruling.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] A challenge might arise, as well, under Ark. Const. art. 2, 6 (guaranteeing "liberty of the press" and the "free communication of thoughts and opinions"). The relevant analysis under this provision would, however, likely follow that applied under the First Amendment to the U.S. Constitution, discussed infra.
[2] On the other hand, restrictions on political activity outside the local government's own boundaries have been struck down. See 51 A.L.R.4th at 745-747.