July 16, 2008

Mr. James A. Cox, Jr., Chair
Texas Lottery Commission
Post Office Box 16630
Austin, Texas 78761-6630

Opinion No. GA-0647

Re: Constitutionality of Government Code section 467.025(a)(5), which provides that a Lottery Commission member "may not . . . directly or indirectly coerce, attempt to coerce, command, or advise a person to pay, lend, or contribute anything of value to another person for political purposes," and its applicability in specific circumstances (RQ-0668-GA)

Dear Mr. Cox:

Government Code section 467.025(a)(5) provides that a Lottery Commission member "may not . . . directly or indirectly coerce, attempt to coerce, command, or advise a person to pay, lend, or contribute anything of value to another person for political purposes." TEX. GOV'T CODE ANN. § 467.025(a)(5) (Vernon 2004). You ask about the applicability and constitutionality of this section in specific circumstances:

1. Does section 467.025(a)(5) prohibit a member of the Lottery Commission either from inviting someone to attend a political fundraising event or from authorizing the inclusion of his or her name as a sponsor or host of a political fundraising event?

2. Does section 467.025(a)(5) prohibit a member of the Lottery Commission from soliciting a contribution to a candidate for a federal office? Does the answer to the preceding question turn on whether the candidate currently [holds] a Texas state office?

3. Is Attorney General [Opinion No. DM-408's] conclusion about the constitutionality of section 467.025(a)(5) correct [i.e., that the statute is not unconstitutional on its face but may be unconstitutional as applied in particular circumstances] in light

of subsequent developments in case law regarding political speech?[1]

## I.          Background

To place section 467.025(a)(5)'s prohibition in context, we first review the responsibilities, qualifications, and constraints that chapter 467 of the Government Code imposes on Lottery Commission members. Chapter 467 establishes the Lottery Commission as an executive agency. *See* TEX. GOV'T CODE ANN. §§ 467.001–.108 (Vernon 2004 & Supp. 2007). Lottery Commission members, who serve without compensation, are appointed by the Governor with the advice and consent of the Senate. *Id.* §§ 467.021(a), .027(a) (Vernon 2004). Members have broad authority to administer chapter 466 of the Government Code and chapter 2001 of the Occupations Code to ensure the fairness and integrity of the state lottery and state-sanctioned bingo. *Id.* § 467.101; *see also id* § 466.014(a) ("The commission . . . [has] broad authority and shall exercise strict control and close supervision over all lottery games conducted in this state to promote and ensure integrity, security, honesty, and fairness in the operation and administration of the lottery."); TEX. OCC. CODE ANN. § 2001.051(b) (Vernon 2004) ("The commission has broad authority and shall exercise strict control and close supervision over all bingo conducted in this state so that bingo is fairly conducted and the proceeds derived from bingo are used for an authorized purpose.").

Chapter 467 imposes several limitations on a member's conduct and relationships while serving on the Commission. While the Code requires that one of the members have experience in the bingo industry, the Code nevertheless restricts members' current relationships with businesses regulated by the Commission or persons who receive Commission funds. *See* TEX. GOV'T CODE ANN. §§ 467.021(c) (Vernon 2004) (Commission membership), .024 (Commission eligibility). The Code prohibits a member from receiving gifts and political contributions from individuals or entities, including political committees, under specified circumstances. *See id.* § 467.106(a), (c) (prohibiting certain gifts and contributions and providing that receiving such gifts or contributions is a Class A misdemeanor).

Section 467.025 of the Government Code, which prohibits Lottery Commission members from engaging in specified acts, includes the provision that is the focus of your questions, subsection (a)(5):

> (a)  A commission member may not:
>
> > (1)  accept any employment or remuneration from:
> >
> > > (A)  a person that has a significant financial interest in the lottery; or

---

[1]*See* Letter from Mr. James A. Cox, Jr., Chair, Texas Lottery Commission, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Jan. 17, 2008) (on file with the Opinion Committee, *also available at* www.texasattorneygeneral.gov ) [hereinafter Request Letter].

(B)  a bingo commercial lessor, bingo distributor, or bingo manufacturer;

(2)  play any lottery or bingo game conducted in this state;

(3)  accept or be entitled to accept any part of the winnings to be paid from a lottery or bingo game conducted in this state;

(4)  use the member's official authority to affect the result of an election or nomination for public office; or

(5)  *directly or indirectly coerce, attempt to coerce, command, or advise a person to pay, lend, or contribute anything of value to another person for political purposes.*

(b)  A commission member or former commission member or the spouse of a commission member or former commission member may not solicit or accept employment from a person regulated by the commission before the second anniversary of the date on which the commission member's service on the commission ends.

*Id.* § 467.025 (emphasis added).  A violation of section 467.025 is grounds for removal of a member by the Governor.  *See id.* § 467.026(a)(3).

## II.     Analysis

### A.     Applicability of Texas Government Code section 467.025(a)(5)

Determining the applicability of section 467.025(a) in particular circumstances requires a construction of the statute.  We begin with your second question, whether section 467.025(a)(5) prohibits a Commission member from soliciting a campaign contribution to a candidate for federal office, and whether the answer depends on the candidate's current status as a state officeholder. *See* Request Letter, *supra* note 1, at 2. The statute does not expressly state that it applies to the solicitation of campaign contributions, and no judicial opinion has construed section 467.025.

In Attorney General Opinion DM-408, however, this office "construe[d] Government Code section 467.025(a)(5) to prohibit soliciting, as well as coercing, commanding, or advising a political contribution." Tex. Att'y Gen. Op. No. DM-408 (1996) at 3.  The opinion first observed that Government Code section 467.025(a)(5) appears to be based on a section of the federal Hatch Act. *Id.* at 2–3.[2]  State and local officers and employees subject to 5 U.S.C. § 1502(a)(2) of the Hatch Act

---

[2]The Hatch Act limits the political activity of government officers and employees, with one part applicable to federal employees and another part applicable to certain officers and employees of state and local agencies that receive

(continued...)

may not "directly or indirectly coerce, attempt to coerce, command, or advise a State or local officer or employee to pay, lend, or contribute anything of value to a party, committee, organization, agency, or person for political purposes." 5 U.S.C. § 1502(a)(2) (2000). The phrase "directly or indirectly coerce, attempt to coerce, command, or advise" in 5 U.S.C. § 1502(a)(2) appears verbatim in Government Code section 467.025(a)(5). *Compare* TEX. GOV'T CODE ANN. § 467.025(a)(5) (2004) *with* 5 U.S.C. § 1502(a)(2) (2000). The similarity in the language of the state and federal statutes, in light of the fact that the federal Hatch Act preceded the Texas statute by some fifty years, led this office to conclude that section 467.025(a)(5) was modeled on the Hatch Act and, accordingly, determine that the phrase quoted above appearing in both the state statute and the federal statute should be construed consistently. *See* Tex. Att'y Gen. Op. No. DM-408 (1996) at 2–3. Thus, Opinion DM-408 found instructive a federal court decision that held that 5 U.S.C. § 1502(a)(2) applies to the solicitation of funds. *Id.* at 3 (citing *Bauers v. Cornett*, 865 F.2d 1517, 1520, 1526–27 (8th Cir. 1989)). Based on *Bauers*, and the similarity between the federal and state statutes, Attorney General Opinion DM-408 concludes that section 467.025(a)(5) is likewise applicable to the solicitation of political contributions. *See* Tex. Att'y Gen. Op. No. DM-408 (1996) at 3.

We are not aware of any subsequent judicial opinion casting doubt on the construction of the federal statute in *Bauers*, or the conclusion in Attorney General Opinion DM-408, that Government Code section 467.025(a)(5) should be construed as prohibiting the solicitation of funds in particular circumstances. And we see no basis in the language of the statute to narrow the construction of "another person" in Government Code section 467.025(a)(5) to exclude solicitations for a candidate for federal office who is currently a state officeholder. Accordingly, we conclude that Government Code section 467.025(a)(5) may apply to the solicitation of contributions to a candidate for a federal office, depending on the particular facts, as discussed below.

In your first question you ask separately about a Commission member's participation in political fundraising, such as by inviting a person to a fundraising event or authorizing the inclusion of the member's name as a sponsor of a fundraising event. The plain language of Government Code section 467.025(a)(5) is sufficiently broad to include conduct involving a fundraising event provided that it constitutes coercion, attempted coercion, a command, or advice to a "person to pay, lend, or contribute" a thing "of value to another person for political purposes." *See* TEX. GOV'T CODE ANN. § 467.025(a)(5) (Vernon 2004). Moreover, we note that federal regulations promulgated under the Hatch Act equate certain fundraising activities with solicitation of political contributions. These regulations refer to participation in fundraising events to illustrate a method of solicitation that is prohibited under the Hatch Act:

An employee may not knowingly:

---

[2](...continued)
federal funds. *See* 5 U.S.C. §§ 1501–08 (2000) (state and local officers and employees), 7321–26 (federal employees). In the portion of the Hatch Act applicable to federal employees, the term "employee" includes an officer. *See id.* § 2105(a).

(a) Personally solicit, accept or receive a political contribution from another person [with an exception not pertinent here];

(b) Personally solicit political contributions in a speech or keynote address given at a fundraiser;

(c) Allow his or her official title to be used in connection with fundraising activities; or

(d) Solicit, accept, or receive uncompensated volunteer services from an individual who is a subordinate.

Example 1: An employee may not host a fundraiser at his or her home. However, a spouse who is not covered under this part may host such a fundraiser and the employee may attend. The employee may not personally solicit contributions to the fundraiser. Moreover, the employee may not accept, or receive political contributions [with limited exceptions not pertinent here].

Example 2: An employee's name may not appear on an invitation to a fundraiser as a sponsor of the fundraiser, or as a point of contact for the fundraiser.

. . . .

5 C.F.R. § 734.303 (2008); *see also* 5 U.S.C. § 7323(a)(2) (2000) (providing that a federal employee subject to the Hatch Act may not "knowingly solicit, accept, or receive a political contribution from any person").

We conclude that Government Code section 467.025(a)(5) is potentially applicable to the fundraising conduct and the solicitation of campaign contributions described in your questions. Whether the statute applies in any particular case will depend on the specific facts. And particular facts and circumstances may raise additional questions of law.[3] We note, however, that these mixed questions of law and fact are for the Governor to determine, at least in the first instance, in the context of removal from office. *See id.* § 467.026(a)(3) (authorizing the Governor to remove a commission member for a violation of section 467.025).

---

[3]For example, some courts have distinguished between partisan and nonpartisan elections to determine the applicability of the Hatch Act. *See Bauers v. Cornett*, 865 F.2d 1517, 1524–25 & n.9 (8th Cir.1989) and cases cited therein. Other courts have found the distinction between a candidate and a non-candidate election, such as referenda or amendment elections, to be more helpful than a strict partisan/nonpartisan distinction. *See Wachsman v. City of Dallas*, 704 F.2d 160, 169–70 (5th Cir. 1983) (upholding city charter prohibiting employees from soliciting candidate contributions and other activity); *Villejo v. City of San Antonio*, 485 F. Supp. 2d 777, 782 (W.D. Tex. 2007) (noting that state has less of an interest in regulating its employees' speech with respect to "measure" elections).

### B.    Constitutionality of Section 467.025(a)(5)

Your third question reflects a concern that Government Code section 467.025(a)(5) may impinge on a Lottery Commission member's First Amendment rights to engage in political activity. *See* Request Letter, *supra* note 1, at 1–2. Because the state statute is modeled on the Hatch Act, judicial analysis of the constitutionality of the federal act necessarily informs our consideration of the state statute.

On several occasions the United States Supreme Court has upheld the Hatch Act and state statutes modeled on the Hatch Act against various constitutional challenges. *See, e.g., United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 556, 581 (1973) (holding that prohibitions in the Hatch Act are neither unconstitutionally vague nor fatally overbroad); *Broadrick v. Oklahoma*, 413 U.S. 601, 608–16 (1973) (rejecting vagueness and overbreadth challenges to a state statute modeled on the Hatch Act); *United Pub. Workers v. Mitchell*, 330 U.S. 75, 100–08 (1947) (rejecting First Amendment and other constitutional challenges to the Hatch Act). The Court has recognized that the Hatch Act interferes with what otherwise would be a government employee's constitutional rights, in particular rights of speech and association under the First Amendment. *See Mitchell*, 330 U.S. at 94–95. In *United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, the Court considered a section of the Hatch Act prohibiting federal employees from "active participation in political management or political campaigns." *Letter Carriers*, 413 U.S. at 551, 556. The Court balanced the First Amendment rights of federal employees with the interests of the government "'as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 564 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). After reviewing the extensive and long-standing history of restrictions on government employees' political activity, the Court identified several important governmental interests reflected in the Hatch Act: that executive branch and agency employees should "administer the law in accordance with the will of Congress, rather than in accordance with their own or the will of a political party" and "enforce the law and execute the programs of the Government without bias or favoritism for or against any political party or group or the members thereof." *Id.* at 564–65. The Court also recognized the importance of government employees avoiding even the appearance of "practicing political justice." *Id.* at 565. The Court observed that the Hatch Act reflected a concern born out of the New Deal era "that the rapidly expanding Government work force should not be employed to build a powerful, invincible, and perhaps corrupt political machine." *Id.* The Court identified a related concern of the Hatch Act, which was intended

> to further serve the goal that employment and advancement in the Government service not depend on political performance, and at the same time to make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs.

*Id.* at 566. The Court concluded that "neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan political conduct by federal employees." *Id.* at 556.

The same day that it issued the *Letter Carriers* decision, the Court considered vagueness and facial overbreadth challenges to an Oklahoma statute modeled on the Hatch Act that forbade classified employees from engaging in specified political activity including solicitation or receipt of a "contribution for any political organization, candidacy, or other political purpose." *Broadrick*, 413 U.S. at 605–06. With respect to the First and Fourteenth Amendments, the Court held that "there is no question that [the Oklahoma statute] is valid at least insofar as it forbids classified employees from: soliciting contributions for partisan candidates, political parties, or other partisan political purposes." *Id.* at 616. The Court further concluded that the state statute was not on its face unconstitutionally vague such that "men of common intelligence must necessarily guess at its meaning." *Id.* at 607 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). The Court further determined that the state statute was not on its face unconstitutionally overbroad:

> [P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that [the state statute, including its prohibition of employee solicitation of campaign contributions,] is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

*Broadrick*, 413 U.S. at 615–16.[4]

Based on *Letter Carriers* and *Broadrick*, this office in Attorney General Opinion DM-408 concluded that a court would not likely determine that Government Code section 467.025(a)(5) is unconstitutional on its face, and that any vagueness or overbreadth challenges must be addressed case by case. *See* Tex. Att'y Gen. Op. No. DM-408 (1996) at 5–6. You have asked that we reconsider that conclusion "in light of subsequent developments in case law regarding political speech." Request Letter, *supra* note 1, at 2. You do not identify which developments you mean, and we do not venture to survey the panoply of jurisprudence relating to political speech. However, recent decisions concerning the political speech of judicial candidates have some bearing on your questions.

In *Republican Party of Minnesota v. White*, the United States Supreme Court struck down a state judicial canon barring state judicial candidates from announcing their views on disputed legal or political issues as a violation of the candidate's First Amendment rights. 536 U.S. 765, 788 (2002). As the canon's restriction concerned core political speech, the court determined that the

---

[4]*See also United States v. Nat'l Treasury Employees Union*, 513 U.S. 454 (1995). In *National Treasury Employees Union*, the Supreme Court held that a statutory limitation on receipt of honoraria for public speaking on topics unrelated to government employment was unconstitutional as applied to federal employees holding positions of GS-15 level and below. *Id.* at 478–80. The Court declined to rule on the facial validity of the honoraria ban, however, in part because "the Government conceivably might advance a different justification for an honoraria ban limited to more senior officials." *Id.* at 478.

proper test was strict scrutiny, requiring the state to prove that the restriction is narrowly tailored to serve a compelling state interest. *Id.* at 774–75. On remand, the court of appeals determined that another provision of the canon, which prohibited judicial candidates from personally soliciting campaign contributions, would also be subject to strict scrutiny. *Republican Party of Minn. v. White,* 416 F.3d 738, 764 (8th cir. 2005), *cert. denied sub nom Dimick v. Republican Party of Minn.,* 546 U.S. 1157 (2006). The court of appeals held that the prohibition was not narrowly tailored to the state's asserted interest in an impartial judiciary. *Id.* at 765–66.

Neither the Supreme Court opinion nor the court of appeals opinion in *White* mentions the Hatch Act, but the opinions raise at least a question about the proper standard for reviewing First Amendment challenges by government officers and employees. *See In re Hecht,* 213 S.W.3d 547, 592 (Tex. Spec. Ct. Rev. 2006) (McClure, J., concurring) (noting that the standard for reviewing the political speech of judges may have changed in light of *White*). However, the Supreme Court in *White* expressly limited its decision to the state's regulation of a person's speech as a judicial candidate, stating that the issue of whether the *Pickering* rationale would apply to a restriction on a sitting judge's speech had not been raised. *White,* 536 U.S. at 796. This fact has led one court to opine that the holding in *White* may be limited to candidate speech. *In re Vincent,* 172 P.3d 605, 606–07 (N.M. 2007); *see also Jenevein v. Willing,* 493 F.3d 551, 557 (5th Cir. 2007) (rejecting *Pickering* balancing in favor of strict scrutiny to review censure of judge because, while a judge is an employee of the state, "[o]ur 'employee' is an elected official, about whom the public is obliged to inform itself").

Specifically in a Hatch Act case, a federal court has applied the traditional *Pickering* balancing test, rejecting strict scrutiny because "[n]othing in *White* . . . suggests that a statute, such as the Hatch Act, which is not targeted at restricting protected speech is subject to a heightened degree of scrutiny." *McEntee v. Merit Sys. Prot. Bd.,* 404 F.3d 1320, 1332 n.7 (Fed. Cir.), *cert. denied,* 546 U.S. 873 (2005). Another court has applied strict scrutiny to hold unconstitutional a city's restrictions on government employees' political speech concerning a referendum "measure," but in doing so suggested that Hatch Act restrictions with respect to candidate elections would survive strict scrutiny analysis because the government's interests in that instance are compelling. *See Villejo v. City of San Antonio,* 485 F. Supp. 2d 777, 781–86 (W.D. Tex. 2007). But, regardless of the standard utilized, no decision subsequent to *White* of which we are aware has called into question the facial constitutionality of the Hatch Act or similar state statutes.[5]

As Government Code section 467.025(a) is modeled on the Hatch Act, a court would likely conclude that the state statute is supported by many of the important governmental interests identified in *Letter Carriers* and *Broadrick*. And the provisions in chapter 467 described above, vesting broad authority in the Commission members to ensure the fairness and integrity of a highly regulated industry, indicate a heightened governmental interest in maintaining public confidence in

---

[5]After *White,* the Supreme Court reiterated the proposition in *Broadrick,* that a statute should not be stricken as facially overbroad unless its application to protected speech is "'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Virginia v. Hicks,* 539 U.S. 113, 119–20 (2003); *see also Broadrick,* 413 U.S. at 615–17.

the Commission, an interest that is furthered by restricting Commission members' political activity. *See* TEX. GOV'T CODE ANN. § 467.101 (Vernon 2004) (granting the Commission "broad authority" and requiring it to exercise "strict control and close supervision over all activities" subject to its jurisdiction); *see also id.* § 466.014(a) (requiring the Commission to exercise its authority "to promote and ensure integrity, security, honesty, and fairness in the operation and administration of the lottery"); TEX. OCC. CODE ANN. § 2001.051(b) (Vernon 2004) (requiring the Commission to exercise its authority "over all bingo conducted in this state so that bingo is fairly conducted and the proceeds derived from bingo are used for an authorized purpose").[6] We adhere to the view this office expressed in Attorney General Opinion DM-408, that a court would not likely conclude that Government Code section 467.025(a)(5) is facially unconstitutional, although a court could possibly conclude that the statute is unconstitutional as applied in a particular case. *See* Tex. Att'y Gen. Op. No. DM-408 (1996) at 5–6.

---

[6]We note that other jurisdictions have imposed virtually identical limitations on high-level officials regulating aspects of the gambling industry. *See, e.g.,* LA. REV. STAT. ANN. §§ 27:226(C)(3)(f) (2001) (providing that a member or employee of a Louisiana Economic Development and Gaming Corporation may not "directly or indirectly coerce, attempt to coerce, command, or advise a person to pay, lend, or contribute anything of value to a party, a committee, an organization, an agency, or a person for political purposes"), 27:13(C)(5) (providing that "no [member of the Louisiana Gaming Control Board] shall attempt to affect the result of an election or a nomination for an office; directly or indirectly coerce, attempt to coerce, command, or advise a person to pay, lend, or contribute any thing of value to a political party, a committee, an organization, an agency, or a person for political purposes"); N.J. STAT. ANN. § 5:12-59(h)(2) (1996) (providing that "[n]o member of the [New Jersey Casino Control Commission], employee of the commission, or employee or agent of the division shall: . . . (2) Directly or indirectly coerce, attempt to coerce, command or advise any person to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes"); V.I. CODE ANN. tit. 32, § 412(h)(2) (providing that no member of the Virgin Islands Casino Control Commission shall: "[d]irectly or indirectly coerce, attempt to coerce, command or advise any person to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes").

## S U M M A R Y

Depending on the particular facts, Government Code section 467.025(a)(5) could apply to prohibit a member of the Lottery Commission from inviting a person to a political fundraising event, authorizing the inclusion of the member's name as a sponsor or host of a political fundraising event, or soliciting a contribution to a candidate for a federal office. The applicability of the statute does not depend on the current status of the candidate as a state officeholder.

A court would not likely find section 467.025(a)(5) unconstitutional on its face, although a court could possibly conclude that it is unconstitutional as applied in particular circumstances.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee